1  ROBERT G. HULTENG, Bar No. 071293
   rhulteng@littler.com
2  JOHN C. FISH, Jr., Bar No. 160620
   jfish@littler.com
3  ANDREW M. SPURCHISE, Bar No. 245998
   aspurchise@littler.com
4  ROXANNA IRAN, Bar No. 273625
   riran@littler.com
5  LITTLER MENDELSON, P.C.
   650 California Street, 20th Floor
6  San Francisco, California  94108.2693
   Telephone:    415.433.1940
7  Facsimile:    415.399.8490

8  Attorneys for Defendants
   UBER TECHNOLOGIES, INC. and
9  RASIER-CA, LLC

10              UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12

13  RICARDO DEL RIO, an individual          Case No.  3:15-cv-03667-EMC
    California resident and TONY MEHRDAD
14  SAGHEBIAN, an individual California     **DEFENDANTS UBER TECHNOLOGIES,**
    resident, on behalf of themselves and all   **INC. AND RASIER-CA, LLC'S NOTICE**
15  others similarly situated,              **OF MOTION AND MOTION TO COMPEL**
                                            **ARBITRATION; MEMORANDUM OF**
16                  Plaintiff,              **POINTS AND AUTHORITIES IN**
                                            **SUPPORT THEREOF**
17          v.
                                            Date:    December 10, 2015
18  UBER TECHNOLOGIES, INC., a              Time:  1:30 p.m.
    Delaware Corporation, RASIER-CA, LLC,   Courtroom: 5, 17th Floor
19  a Delaware Limited Liability Company,
    and DOES 1 through 10, inclusive,       Complaint Filed: August 11, 2015
20                                          FAC Filed:  September 21, 2015
                    Defendants.             Trial Date:  None set
21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

Case No. 3:15-cv-03667

MOTION TO COMPEL TO ARBITRATION

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on Thursday, December 10, 2015 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5 of this Court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California, Defendants Uber Technologies, Inc. and Rasier-CA, LLC (collectively, "Defendants") will, and hereby do, move the Court for an order compelling to arbitration on an individual basis the non-PAGA claims of Plaintiffs RICARDO DEL RIO and TONY MEHRDAD SAGHEBIAN (collectively, "Plaintiffs") pursuant to their agreements to arbitrate with Defendants, dismissing all class claims alleged in Plaintiffs' First Amended Complaint ("FAC"), and staying Plaintiffs' PAGA claim pending arbitration of their individuals claims.  This motion is brought on the grounds that all of Plaintiffs' claims against Defendants are subject to a valid and enforceable arbitration agreement that requires each Plaintiff to arbitrate his non-PAGA claims on an individual basis only, and not in a court of law.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities included herein, the Declaration of Michael Colman filed herewith, the Request for Judicial Notice filed herewith, the pleadings and papers on file in this action, and such additional evidence or argument as may be presented at or prior to the time of the hearing.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

Case No. 3:15-cv-03667

MOTION TO COMPEL TO ARBITRATION

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND FACTS ..................................................................................... 2

    A.      Defendants Uber Technologies, Inc. And Rasier-CA, LLC ....................................... 2

    B.      Plaintiffs Agreed To Be Bound By An Arbitration Agreement Covering Their Wage And Hour Claims. ................................................................................................ 2

    C.      Plaintiffs Have Refused To Arbitrate Their Claims. .................................................. 6

III.    THE COURT SHOULD ORDER EACH PLAINTIFF TO ARBITRATE HIS NON-PAGA CLAIMS ON AN INDIVIDUAL BASIS, DISMISS THE CLASS CLAIMS, AND STAY THE PAGA CAUSE OF ACTION. ................................................. 7

    A.      The Federal Arbitration Act Applies To The Arbitration Provisions. ........................ 7

    B.      The Arbitration Provisions Are Valid And Must Be Enforced.................................... 9

        1.      The Arbitration Provisions Delegate The Gateway Issues To The Arbitrator.................................................................................................... 9

        2.      The Gateway Issues Under The FAA Have Been Satisfied. ........................ 10

            a.      A Valid Agreement To Arbitrate Exists. ........................................... 10

                (1)     The Arbitration Provisions Are Not Procedurally Unconscionable.................................................................... 11

                (2)     The Arbitration Provisions Are Not Substantively Unconscionable.................................................................... 16

            b.      Plaintiffs' Non-PAGA Claims Are Covered By The Arbitration Provision. ......................................................................... 21

    C.      Plaintiffs' Class Claims Cannot Proceed And Plaintiffs' PAGA Claims Should Be Stayed. ................................................................................................................. 22

IV.     CONCLUSION................................................................................................... 24

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Anderson v. Pitney Bowes, Inc.*,
2005 U.S. Dist. LEXIS 37662 (N.D. Cal. May 4, 2005) ..........................................9

*Andrade v. P.F. Chang's China Bistro, Inc.*,
2013 U.S. Dist. LEXIS 112759 (S.D. Cal. Aug. 9, 2013) ......................................18

*Armendariz v. Found. Health Psychare Servs.*,
24 Cal. 4th 83 (2000) ...............................................................................11, 20

*Ashbey v. Archstone Prop. Mgmt., Inc.*,
612 Fed. App'x 430 (9th Cir. 2015) ....................................................................19

*AT&T Mobility, LLC v. Concepcion*,
131 S. Ct. 1740 (2011) ..................................................................7, 8, 14, 23

*AT&T Mobility LLC v. Smith*,
2011 U.S. Dist. LEXIS 125367 (E.D. Pa. Oct. 6, 2011)........................................19

*Bencharsky v. Cottman Transmission Sys., LLC*,
625 F. Supp. 2d 872 (N.D. Cal. 2008) .................................................................22

*Boghos v. Certain Underwriters at Lloyd's of London*,
36 Cal. 4th 495 (2005) .......................................................................................17

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ............................................................................16

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006)..................................................................................7, 8, 9

*Circuit City Stores, Inc. v. Ahmed*,
283 F.3d 1198 (9th Cir. 2002) .....................................................................13, 14

*Circuit City Stores, Inc. v. Najd*,
294 F.3d 1104 (9th Cir. 2002) ............................................................................14

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003)...............................................................................................8

*Cobb v. Ironwood Country Club*,
233 Cal. App. 4th 960 (2015) .............................................................................19

*Cronus Investments, Inc. v. Concierge Servs.*,
35 Cal. 4th 376 (2005) ..........................................................................................8

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

*Dittenhafer v. Citigroup,*
2010 U.S. Dist. LEXIS 77673 (N.D. Cal. Aug. 2, 2010) ...........................................................8

*Doctor's Assocs., Inc. v. Casarotto,*
517 U.S. 681 (1996) ...............................................................................................................16

*Dream Theater, Inc. v. Dream Theater,*
124 Cal. App. 4th 547 (2004) ..................................................................................................9

*Dwyer v. Dynetech Corp.,*
2007 U.S. Dist. LEXIS 71647 (N.D. Cal. Sept. 17, 2007) ......................................................12

*EEOC v. Waffle House, Inc.,*
534 U.S. 279 (2002) ................................................................................................................21

*Fantastic Sams Franchise Corp. v. FSRO Ass'n,*
824 F. Supp. 2d 221 (D. Mass. 2011) ....................................................................................19

*First Options of Chicago v. Kaplan,*
514 U.S. 938 (1995) ................................................................................................................10

*Gentry v. Superior Court,*
42 Cal. 4th 443 (2007) ......................................................................................................13, 23

*Gilmer v. Interstate/Johnson Lane Corp.,*
500 U.S. 20 (1991) ....................................................................................................................7

*Hall St. Assoc., LLC v. Mattel, Inc.,*
552 U.S. 576 (2008) ..................................................................................................................7

*Hoffman v. Citibank, N.A.,*
546 F.3d 1078 (9th Cir. 2008) ................................................................................................10

*Howsam v. Dean Witter Reynolds, Inc.,*
537 U.S. 79 (2002) ....................................................................................................................9

*Htay Htay Chin v. Advanced Fresh Concepts Franchise Corp.,*
194 Cal. App. 4th 704 (2011) ..................................................................................................18

*Iskanian v. CLS Transp. Los Angeles, LLC,*
59 Cal. 4th 348 (2014) ...........................................................................................1, 19, 20, 22

*Johnmohammadi v. Bloomingdale's, Inc.,*
755 F.3d 1072 (9th Cir. 2014) .....................................................................................13, 14, 22

*Kairy v. Supershuttle, Int'l,*
2012 U.S. Dist. LEXIS 134945 (N.D. Cal. Sept. 20, 2012) ...................................................23

*Kilgore v. KeyBank, Nat'l Ass'n,*
718 F.3d 1052 (9th Cir. 2013) ...........................................................................................11, 13

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

ii.

MOTION TO COMPEL TO ARBITRATION

Case No. 3:15-cv-03667

*Lane v. Francis Capital Mgmt. LLC*,
    224 Cal. App. 4th 676 (2014) ..................................................................16

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
    514 U.S. 52 (1995) ..................................................................................8

*Mendoza v. Ad Astra Recovery Servs.*,
    2014 U.S. Dist. LEXIS 1716 (C.D. Cal. Jan. 6, 2014) .........................13

*Mill v. Kmart Corp.*,
    2014 U.S. Dist. LEXIS 165666 (N.D. Cal. Nov. 26, 2014)..................13

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)..............................................................................17

*Mohamed v. Uber Techs., Inc.*,
    2015 U.S. Dist. LEXIS 75288 (N.D. Cal. June 9, 2015) ............... passim

*Mortensen v. Bresnan Comm., LLC*,
    722 F.3d 1151 (9th Cir. 2013) ................................................................8

*Morvant v. P.F. Chang's China Bistro, Inc.*,
    870 F. Supp. 2d 831 (N.D. Cal. 2012) .............................................18, 23

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ......................................................................7, 20, 21

*Murphy v. DirectTV, Inc.*,
    724 F.3d 1218 (9th Cir. 2013) ..............................................................23

*Pacificare Health Sys., Inc. v. Book*,
    538 U.S. 401 (2003)...........................................................................9, 17

*Pearson Dental Supplies, Inc. v. Superior Court*,
    48 Cal. 4th 665 (2010) ..........................................................................20

*Peng v. First Republic Bank*,
    219 Cal. App. 4th 1462 (2013) ..............................................................19

*Perry v. Thomas*,
    482 U.S. 483 (1987)................................................................................8

*Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*,
    55 Cal. 4th 223 (2012) ...........................................................10, 11, 17, 20

*Rent-A-Center, W., Inc. v. Jackson*,
    561 U.S. 63 (2010)..................................................................................9

*Rodriguez v. American Techs., Inc.*,
    136 Cal. App. 4th 1110 (2006) ...............................................................8

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

iii.

MOTION TO COMPEL TO ARBITRATION

Case No. 3:15-cv-03667

*Rosas v. Macy's Inc.*,
  2012 U.S. Dist. LEXIS 121400 (C.D. Cal. Aug. 24, 2012)......................................13

*Sakkab v. Luxottica Retail N. Am., Inc.*,
  2015 U.S. App. LEXIS 17071 (9th Cir. Sept. 28, 2015) .................................1, 20

*Sanchez v. Valencia Holding Co., LLC*,
  61 Cal. 4th 899 (2015) .................................................................... passim

*Sanchez v. Western Pizza Enters., Inc.*,
  172 Cal. App. 4th 154 (2009) ...............................................................20

*Serpa v. Cal. Sur. Invs., Inc.*,
  215 Cal. App. 4th 695 (2013) ..........................................................19, 14

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999) ..................................................................9

*Slaughter v. Stewart Enters.*,
  2007 U.S. Dist. LEXIS 56732 (N.D. Cal. Aug. 3, 2007)..............................19

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010).............................................................................23

*Tompkins v. 23andMe, Inc.*,
  2014 U.S. Dist. LEXIS 88068 (N.D. Cal. June 25, 2014) ...........................17

*Velazquez v. Sears, Roebuck & Co.*,
  2013 U.S. Dist. LEXIS 121400 (S.D. Cal. Aug. 26, 2013) ......................13, 18

**STATUTES**

9 U.S.C. § 1 *et seq.*................................................................... passim

9 U.S.C. § 2 ...........................................................................7, 23

9 U.S.C. § 3 .................................................................................23

9 U.S.C. § 4 ...............................................................................9, 22

29 U.S.C. § 201 *et seq* ........................................................1, 6, 22

29 U.S.C. § 623 ..........................................................................14

Bus. & Prof.§ Code § 17200 *et seq.*..........................................6

Civ. Code § 1670.5 ....................................................................20

Labor Code § 2699......................................................................6

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

iv.

Case No. 3:15-cv-03667

MOTION TO COMPEL TO ARBITRATION

Private Attorneys General Act of 2004 .................................................................................... passim

**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 23 ......................................................................................................................1

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

v.

MOTION TO COMPEL TO ARBITRATION

Case No. 3:15-cv-03667

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

On April 17, 2015, Plaintiff Ricardo Del Rio ("Plaintiff Del Rio") entered into an arbitration agreement with Rasier-CA, LLC, Uber Technologies, Inc.'s ("Uber") wholly owned subsidiary.  Plaintiff Tony Mehrdad Saghebian ("Plaintiff Saghebian") also entered, on behalf of his corporation Eeman, Inc., into an arbitration agreement with Uber on August 8, 2013.  The arbitration agreement executed by both Plaintiffs provides that it "applies, without limitation, to disputes arising out of or related to this Agreement and disputes arising out of or related to [Plaintiffs'] relationship with [Uber/the Company]," including, but not limited to, "disputes regarding any city, county, state or federal wage-hour law, … unfair competition, compensation, breaks and rest periods, expense reimbursement, … [and] the Fair Labor Standards Act, … and state statutes, if any, addressing the same or similar subject matters, and all other similar federal and state statutory and common law claims."  The agreement further states that: "[Plaintiffs] and [Uber/the Company] agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis."  The parties also clearly and unmistakably agreed to delegate to arbitration virtually all threshold issues related to the enforceability and validity of the arbitration agreement.

Despite being bound by a valid arbitration agreement covering any claims arising out of their relationship with Defendants, including wage and hour claims, Plaintiffs proceeded to file the instant lawsuit, alleging violations of the California Labor Code and the Fair Labor Standards Act on a class[1] and collective basis.  Accordingly, Defendants bring this motion to compel Plaintiffs'

---

[1] Plaintiffs allege a cause of action under the Private Attorneys General Act of 2004 ("PAGA"), but seek to prosecute it as a class claim.  This constitutes an admission that the PAGA claims Plaintiffs seek to prosecute are sufficiently similar to claims brought under Rule 23 to warrant preemption under the FAA of the *Iskanian* rule against PAGA waivers.

Nevertheless, in light of the Ninth Circuit's recent decision in *Sakkab v. Luxottica Retail N. Am., Inc.*, 2015 U.S. App. LEXIS 17071 (9th Cir. Sept. 28, 2015), Defendants do not by this motion seek to compel arbitration of the Plaintiffs' PAGA cause of action at this time.  Defendants reserve all rights to do so should the Ninth Circuit or the United States Supreme Court modify or reverse the decision.

However, even if the Court finds that the representative action waivers are unenforceable,

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

1.

Case No. 3:15-cv-03667
MOTION TO COMPEL TO ARBITRATION

1   compliance with their agreements to arbitrate and request that the Court dismiss Plaintiffs' class

2   claims, order each Plaintiff to submit his non-PAGA individual claims to arbitration, and stay

3   litigation of Plaintiffs' PAGA claim pending arbitration of their individual claims.

4   **II.     BACKGROUND FACTS**

5       **A.     Defendants Uber Technologies, Inc. And Rasier-CA, LLC**

6           Uber is a technology company that offers a smartphone application connecting riders

7   looking for transportation to independent transportation providers looking for riders (the "Uber

8   App"). (Declaration of Michael Colman ("Colman Decl.") ¶ 3.) Uber offers the Uber App as a tool

9   to facilitate transportation services, and it licenses the use of the Uber App to independent

10   transportation providers. (*Id.*) Rasier-CA, LLC is a wholly owned subsidiary of Uber engaged in

11   the business of providing lead generation to independent transportation providers through the Uber

12   App. (*Id.*, ¶¶ 2, 4.)

13           Uber developed and licenses multiple software products, including: (1) uberX, (2)

14   UberBLACK, and (3) UberSUV. (*Id.*, ¶ 4.) Any independent transportation provider who wishes to

15   access the uberX platform to book passengers must first enter into the "Rasier Software Sublicense

16   & Online Services Agreement" ("Rasier Agreement") with the applicable Rasier entity. (*Id.*, ¶ 7.)

17   Any independent transportation provider who wishes to access the UberBLACK or UberSUV

18   platform to book passengers must enter into a Software License & Online Services Agreement

19   ("Licensing Agreement") with Uber. (*Id.*)

20       **B.     Plaintiffs Agreed To Be Bound By An Arbitration Agreement Covering Their**
21              **Wage And Hour Claims.**

22           Plaintiff Del Rio signed up to use the Uber App to book passengers using the uberX

23   platform on or about April 15, 2015. (Colman Decl., ¶ 11.) On April 17, 2015, Plaintiff Del Rio's

24

25

---

26   Defendants' motion to compel individual arbitration of Plaintiffs' non-PAGA claims should still be
27   granted because the arbitration agreements expressly permit individual claims to proceed to
arbitration and other claims to remain in Court and stayed pending the outcome of Plaintiffs'
28   individual arbitrations.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

2.

MOTION TO COMPEL TO ARBITRATION

Case No. 3:15-cv-03667

account was activated, and on that date he accepted, through the Uber App, the November 10, 2014 Raiser Agreement.[2]  (*Id.*)

Plaintiff Saghebian signed up, on behalf of his transportation company Eeman, Inc., to use the Uber App on October 3, 2012 to book passengers using the UberBLACK/UberSUV platform.  (*Id.*, ¶ 12; Request for Judicial Notice, Exs. A-B.)  On October 5, 2012, Plaintiff Saghebian's account was activated, and he accepted, also through the Uber App, the August 2011 Partner/Driver Terms and Conditions.  (*Id.*)  On or about July 22, 2013, Uber notified registered California transportation providers and drivers using the UberBLACK and UberSUV platforms by email that it intended to issue an updated Licensing Agreement (the "July 2013 Licensing Agreement") and Driver Addendum (the "July 2013 Driver Addendum")[3] "[w]ithin the next two weeks."  (*Id.*)  The email that Uber sent to transportation providers and their drivers included a link to the updated versions of these agreements, thereby affording Plaintiff Saghebian an opportunity to review the agreements.  (*Id.*, Ex. C.)  Uber also posted the July 2013 Licensing Agreement and the July 2013 Driver Addendum on each transportation provider's and driver's "Driver Portal."  (*See id.*, ¶ 14.)  On August 8, 2013, Plaintiff Saghebian accepted the July 2013 Licensing Agreement, which also contained an arbitration provision.[4]  (*Id.*, ¶ 12.)

Independent transportation providers like Plaintiff Del Rio and Plaintiff Saghebian cannot access the uberX and UberBLACK/UberSUV platforms to book passengers unless and until they electronically accept the applicable agreement.  (*Id.*, ¶ 7.)  After completing the sign-up process, a new independent transportation provider is prompted to click "Yes, I agree" after being provided the opportunity to review the applicable agreement within the Uber App, and then they are asked to

---

[2] The November 10, 2014 Rasier Agreement is attached as Exhibit A to Mr. Colman's Declaration. Defendants acknowledge that although contained in a different agreement, the Arbitration Provision contained in the November 10, 2014 Rasier Agreement is substantially identical to that contained in the June 21, 2014 agreement considered by this Court in the *Mohamed* case, Case No. C-14-5200-EMC.

[3] The July 2013 Licensing Agreement and the July 2013 Driver Addendum are attached as Exhibits D and E, respectively, to Mr. Colman's Declaration.

[4] This arbitration provision was examined by this Court in the *Gillette* case, Case No. C-14-5241-EMC.  The different factual circumstances at issue here, including the fact that Plaintiff Saghebian runs his own corporation, and did prior to contracting with Uber, warrants a different result.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

3.

Case No. 3:15-cv-03667

MOTION TO COMPEL TO ARBITRATION

confirm their acceptance a second time.  (*Id.*, ¶ 9.)  Each Plaintiff was free to spend as much time as he wished reviewing the applicable agreement on his smartphone.  And after clicking "Yes, I agree," each Plaintiff had access to the agreement accepted by him to review at his leisure, either online or by printing a copy.  (*Id.*)

The July 2013 Licensing Agreement and the Rasier Agreement both contain an arbitration agreement (the "Arbitration Provisions"), which broadly requires transportation providers who do not opt out to individually arbitrate ***all*** disputes arising out of the applicable agreement and/or their relationship with Uber, including wage and hour and compensation issues related to that relationship.   Plaintiffs also expressly agreed to arbitrate any challenges to the validity or enforceability of the Arbitration Provisions.  The Arbitration Provisions, in relevant part, read as follows:

> This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA") and evidences a transaction involving commerce.  This Arbitration Provision applies to any dispute arising out of or related to this Agreement or termination of the Agreement and survives after the Agreement terminates…

> **Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration.  This Arbitration Provision requires all such disputes be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial.**

> Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision.

> Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to disputes arising out of or related to this Agreement and disputes arising out of or related to Your relationship with [Uber/the Company], including termination of the relationship.

(Colman Decl., Ex. A [Rasier Agreement] at § 15.3.i [bold in original]; *id.*, Ex. D [July 2013 Licensing Agreement] at § 14.3i.)  The Arbitration Provisions in each agreement further provide that each Plaintiff must pursue any claims in arbitration "on an individual basis only, and not on a class, collective, or private attorney general representative action basis."  (*Id.*, Ex. A at § 15.3.v; *id.*, Ex. D at § 14.3v.)

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

4.
MOTION TO COMPEL TO ARBITRATION

Case No. 3:15-cv-03667

In addition, the Rasier Agreement accepted by Plaintiff Del Rio also provided that arbitration could not be "by way of class, collective, or representative action" and that all matters regarding the validity and interpretation of the Arbitration Provision "shall be decided by an Arbitrator and not by a court or judge." (*Id.*, Ex. A at § 15.3.i.)  The Arbitration Provision in the Rasier Agreement further provides that "[t]he Arbitrator shall have no authority to consider or resolve any claim or issue any relief on any basis other than an individual basis." (*Id.*, Ex. A at § 15.3.v.)

Plaintiffs' agreement to arbitration, under either agreement, was voluntary.  Indeed, hundreds of independent transportation providers have opted out of the Arbitration Provision.  (*Id.*, ¶ 13.)  Each Plaintiff was provided 30 days to opt-out of the Arbitration Provision, and was also notified of his right to consult with an attorney regarding the dispute resolution provision:

> **Your Right To Opt Out Of Arbitration.**
> **Arbitration is not a mandatory condition of your contractual relationship with Uber.  If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision by notifying Uber in writing of your desire to opt out of this Arbitration Provision…Should you not opt out of this Arbitration Provision within the 30-day period, you and [Uber/the Company] shall be bound by the terms of this Arbitration Provision.  You have the right to consult with counsel of your choice concerning this Arbitration Provision.  You understand that you will not be subject to retaliation if you exercise your right to assert claims or opt-out of coverage under this Arbitration Provision.**

(*Id.*, Ex. A at § 15.3.viii [bold in original]; *id.*, Ex. D at § 14.3viii [bolded added].)

The Rasier Agreement also contains extensive cautionary notices that advised Plaintiff Del Rio of the consequences of agreeing to arbitration and of choosing not to opt-out, as well as of certain pending litigation against Defendants.  (*Id.*, Ex. A at pp. 1, 14-15.)  The following notice appears on the ***very first page of the Rasier Agreement***:

> **IMPORTANT: PLEASE NOTE THAT TO USE THE UBER SERVICES, YOU MUST AGREE TO THE TERMS AND CONDITIONS SET FORTH BELOW.  PLEASE REVIEW THE ARBITRATION PROVISION CAREFULLY , AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH THE COMPANY ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION UNLESS YOU CHOOSE TO OPT OUT OF THE ARBITRATION PROVISION. … IF YOU DO NOT WISH TO BE SUBJECT TO ARBITRATION, YOU MAY OPT OUT OF THE ARBITRATION PROVISION…**

(*Id.*, Ex. A at p. 1 [bold in original].)  In addition, the following language appears immediately prior

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

5.

MOTION TO COMPEL TO ARBITRATION

Case No. 3:15-cv-03667

to the Arbitration Provision in the Rasier Agreement:

> IMPORTANT:  This arbitration provision will require you to resolve any claim that you may have against the Company or Uber on an individual basis pursuant to the terms of the Agreement unless you choose to opt out of the arbitration provision. This provision will preclude you from bringing any class, collective, or representative action against the Company or Uber…
>
> ***<u>Cases have been filed against Uber and may be filed in the future involving claims by users of the Service, including by drivers.  You should assume that there are now, and may be in the future, lawsuits against the Company alleging, class, collective, and/or representative claims on your behalf. . . Such claims, if successful, could result in some monetary recovery to you.  (THESE CASES NOW INCLUDE, FOR EXAMPLE, … O'CONNOR V. UBER TECHNOLOGIES, INC., ET AL., CASE NO. CV 13-03826-EM (NORTHERN DISTRICT OF CALIFORNIA)…</u>***

(*Id.*, Ex. A at pp. 14-15 [bold and italics in original].)

Neither Plaintiff opted out of the Arbitration Provision contained in his agreement, and accordingly, each Plaintiff is contractually bound to individually arbitrate his non-PAGA claims against Defendants.  (*Id.*, ¶ 13.)

## C.     Plaintiffs Have Refused To Arbitrate Their Claims.

On August 11, 2015, Plaintiff Del Rio filed a class action complaint in the United States District Court, Northern District of California, alleging eight claims under the California Labor Code, one claim under the California Business & Professions Code, and one claim for injunctive relief.  *See* Dkt. 1.  On September 21, 2015, a First Amended Complaint ("FAC") was filed, adding Plaintiff Saghebian as a named plaintiff and adding an additional cause of action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.  *See* Dkt. 13.  Plaintiffs' FAC alleges eleven causes of action: (1) failure to pay overtime wages; (2) failure to pay minimum wages; (3) violation of Labor Code section 2699 pursuant to the Private Attorneys General Act ("PAGA"); (4) failure to provide itemized wage statements; (5) expense reimbursement; (6) failure to provide meal periods; (7) failure to provide rest periods; (8) waiting time penalties; (9) unfair business practices pursuant to the Business & Professions Code § 17200 *et seq*.; (10) injunctive relief; and (11) violation of the FLSA.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

6.

MOTION TO COMPEL TO ARBITRATION

Case No. 3:15-cv-03667

Aside from the PAGA cause of action, each of the foregoing claims is encompassed by the terms of the Arbitration Provision.  Despite the existence of a valid and enforceable arbitration agreement, each Plaintiff refused to abide by its terms by filing the instant action.

## III. THE COURT SHOULD ORDER EACH PLAINTIFF TO ARBITRATE HIS NON-PAGA CLAIMS ON AN INDIVIDUAL BASIS, DISMISS THE CLASS CLAIMS, AND STAY THE PAGA CAUSE OF ACTION.[5]

### A. The Federal Arbitration Act Applies To The Arbitration Provisions.

As affirmed by the United States Supreme Court in *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) ("*Concepcion*"), the Federal Arbitration Act ("FAA") declares a liberal policy favoring the enforcement of arbitration policies, stating: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  In enacting the FAA, Congress sought to overcome widespread judicial hostility to the enforcement of arbitration agreements.  *See Hall St. Assoc., LLC v. Mattel, Inc*., 552 U.S. 576, 581 (2008); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (explaining that FAA was enacted "[t]o overcome judicial resistance to arbitration").  The FAA permits private parties to "trade[] the procedures … of the courtroom for the simplicity, informality, and expedition of arbitration."  *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 31 (1991) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 628 (1985)).

The FAA is designed "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).  To this end, the FAA not only places arbitration agreements on equal

---

[5] Defendants anticipate that Plaintiffs will raise the order denying Defendants' motions to compel arbitration in two cases currently pending before this Court: *Gillette v. Uber Technologies, Inc.* (Case No. C-14-5241-EMC) and *Mohamed v. Uber Technologies, Inc., Rasier, LLC, Hirease, LLC* (Case No. C-14-5200).  Defendants respectfully submit that the orders denying the motions to compel arbitration are incorrect and Defendants have filed notices of appeal in both actions.  In any event, the Court has not considered the enforceability of the Rasier Agreement accepted by Plaintiff Del Rio.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

7.
MOTION TO COMPEL TO ARBITRATION

Case No. 3:15-cv-03667

footing with other contracts, but amounts to a "congressional declaration of a liberal federal policy *favoring* arbitration agreements." *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (quoting *Moses H. Cone*, 460 U.S. at 24) (emphasis added). As the Ninth Circuit has declared: "In our view, *Concepcion* crystalized the directive that *the FAA's purpose is to give preference (instead of mere equality) to arbitration provisions*." *Mortensen v. Bresnan Comm., LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013) (emphasis added). In this regard, the FAA "eliminates district court discretion and requires the court to compel arbitration of issues covered by the arbitration agreement." *Dittenhafer v. Citigroup*, 2010 U.S. Dist. LEXIS 77673, at *5 (N.D. Cal. Aug. 2, 2010) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (upheld on appeal).

The Arbitration Provisions at issue here are indisputably governed by the FAA. First, the Arbitration Provisions so state, which is sufficient to bring it within the purview of the FAA. *See Buckeye Check Cashing*, 546 U.S. at 442-443 (where arbitration agreement expressly provided that FAA was to govern, the FAA preempted application of state law and thus under the FAA, the question of the contract's validity was left to the arbitrator); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63-64 (1995) (for state law to apply exclusively to an arbitration agreement, the agreement must opt out of the FAA and express that state law applies); *Cronus Investments, Inc. v. Concierge Servs.*, 35 Cal. 4th 376, 394 (2005) (recognizing parties to an arbitration agreement may expressly designate that the FAA's procedural provisions apply); *Rodriguez v. American Techs., Inc.*, 136 Cal. App. 4th 1110, 1115 (2006) (reversing lower court's order denying defendant's motion to compel arbitration because the parties expressly agreed that any arbitration proceeding would move forward under the FAA's procedural provisions and the trial court therefore lacked discretion under state arbitration law to deny the motion).

Second, the agreements within which each Arbitration Provision is contained affect commerce. The FAA's term "involving commerce" is interpreted broadly. *See, e.g.*, *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (finding the requisite commerce for FAA coverage even when the individual transaction did not have a substantial effect on commerce). The Uber App is available to riders and transportation providers in over 100 cities across the country. (Colman Decl., ¶ 5.) As a user of the Uber App, each Plaintiff utilized its interstate reach and popularity as a tool to

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

8.

MOTION TO COMPEL TO ARBITRATION

Case No. 3:15-cv-03667

1  book passengers in exchange for payment by the passenger.  Plaintiffs' use of the Uber App

2  therefore involved commerce sufficient for the FAA to apply.  The FAA controls here.

3  **B.     The Arbitration Provisions Are Valid And Must Be Enforced.**

4  The FAA requires courts to compel arbitration "in accordance with the terms of the

5  agreement" upon the motion of either party to the agreement, consistent with the principle that

6  arbitration is a matter of contract.  9 U.S.C. § 4.  In determining whether to compel arbitration under

7  the FAA, only two "gateway" issues need to be evaluated: (1) whether there is a valid agreement to

8  arbitrate between the parties; and (2) whether the agreement covers the dispute.  *PacifiCare Health*

9  *Sys., Inc. v. Book*, 538 U.S. 401, 407 n.2 (2003); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S.

10  79, 83-84 (2002).  "Any doubt concerning the scope of arbitrable issues should be resolved in favor

11  of arbitration."  *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (citing *Moses H.*

12  *Cone*, 460 U.S. at 24-25).  "[T]he district court ***must*** order arbitration if it is satisfied that the making

13  of the agreement for arbitration is not in issue."  *Id.* at 719-720 (emphasis added).

14  **1.     The Arbitration Provisions Delegate The Gateway Issues To The**

15  **Arbitrator.**

16  Before reaching these gateway issues, however, the Court must examine the

17  underlying contract to determine whether the parties have agreed to commit the threshold question of

18  arbitrability to the arbitrator.  *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An

19  agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party

20  seeking arbitration asks the court to enforce, and the FAA operates on this additional arbitration

21  agreement just as it does on any other."); *Buckeye Check Cashing*, 546 U.S. at 446 ("the issue of the

22  contract's validity is considered by the arbitrator in the first instance").

23  This Court's review is limited to the face of the arbitration agreement.  *See Anderson*

24  *v. Pitney Bowes, Inc.*, 2005 U.S. Dist. LEXIS 37662, at *14 (N.D. Cal. May 4, 2005) (explaining

25  that courts are permitted only to "conduct[] a *facial and limited review* of [a] contract" when

26  deciding "whether the parties have in fact clearly and unmistakably agreed to commit the question of

27  arbitrability to the arbitrator") (emphasis in original); *see also Dream Theater, Inc. v. Dream*

28  *Theater*, 124 Cal. App. 4th 547, 553 (2004) (whether the parties have delegated threshold issues to

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

9.

Case No. 3:15-cv-03667

MOTION TO COMPEL TO ARBITRATION

1   the arbitrator "requires the courts to examine and, *to a limited extent*, construe the underlying

2   agreement") (emphasis added).

3        Here, the Arbitration Provisions clearly and unmistakably provide that the following

4   matters must be decided by the arbitrator: "disputes arising out of or relating to interpretation or

5   application of this Arbitration Provision, including the enforceability, revocability or validity of the

6   Arbitration Provision or any portion of the Arbitration Provision."   (Colman Decl., Ex. A at

7   § 15.3.i; *id.*, Ex. D at § 14.3.)   Therefore, any question as to the validity of the Arbitration Provisions

8   and whether they apply to this dispute has been delegated to, and must be decided by, the arbitrator.

9        **2.   The Gateway Issues Under The FAA Have Been Satisfied.**

10        Even if the Court were to find that it, rather than the arbitrator, should evaluate the

11   enforceability and interpretation of the Arbitration Provisions, both of the "gateway" issues have

12   been satisfied here, and thus, this case should be compelled to arbitration.

13        **a.   A Valid Agreement To Arbitrate Exists.**

14        General contract law principles apply to the interpretation and enforcement of

15   arbitration agreements. *First Options of Chicago v. Kaplan*, 514 U.S. 938, 944 (1995).   Plaintiffs

16   cannot credibly claim no agreement to arbitrate was formed.   This Court has already held that, under

17   substantially similar circumstances, a binding arbitration agreement was formed.   *Mohamed v. Uber*

18   *Techs., Inc.*, 2015 U.S. Dist. LEXIS 75288, at *25-26 (N.D. Cal. June 9, 2015) (drivers "had the

19   opportunity to review the relevant terms of the hyperlinked agreements, and the existence of the

20   relevant contracts was made conspicuous in the first application screen which the drivers were

21   required to click through in order to continue using the Uber application… Whether or not the

22   drivers actually clicked the links or otherwise read the terms of the contracts is irrelevant …").

23   Arbitration can be denied only where a party proves a defense to enforcement of the agreement, such

24   as unconscionability.   *Hoffman v. Citibank, N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008) ("party

25   resisting arbitration bears the burden of proving that the claims at issue are unsuitable for

26   arbitration"); *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*, 55 Cal. 4th 223,

27   235 (2012).

28

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

10.
MOTION TO COMPEL TO ARBITRATION

Case No. 3:15-cv-03667

1    To establish a defense to enforcement of the parties' arbitration agreement based on

2    unconscionability, Plaintiffs bear the burden of proving that the agreement is **both** procedurally and

3    substantively unconscionable.  *Pinnacle Museum*, 55 Cal. 4th at 236, 247; *Armendariz v. Found.*

4    *Health Psychare Servs.*, 24 Cal. 4th 83, 89 (2000) ("No matter how heavily one side of the scale tips,

5    both procedural and substantive unconscionabilty are required for a court to hold an arbitration

6    agreement unenforceable.").  Procedural unconscionability "addresses the circumstances of contract

7    negotiation and formation, focusing on oppression or surprise."  *Pinnacle Museum*, 55 Cal. 4th at

8    246.  Substantive unconscionability relates to "the fairness of the agreement's actual terms and to

9    assessments of whether they are overly harsh or one-sided."  *Id.*

10                      **(1)    The Arbitration Provisions Are Not Procedurally**
                              **Unconscionable.**
11

12    The Arbitration Provisions are not procedurally unconscionable because each

13    Plaintiff had adequate opportunity to review the provision contained in his agreement, each

14    provision is conspicuous, and, in any event, Plaintiffs had a meaningful opportunity to opt-out of the

15    provision, which neither exercised.  In other words, there is nothing "oppressive" or "surprising"

16    about the Arbitration Provisions here.

17                Indeed, Defendants provided each Plaintiff ample notice and opportunity to review

18    the agreements—and thus the Arbitration Provision contained in each agreement—before each

19    Plaintiff accepted his agreement.  The California Supreme Court recently confirmed that a party is

20    **not obligated** to highlight or specifically call attention to an arbitration clause, *Sanchez v. Valencia*

21    *Holding Co., LLC*, 61 Cal. 4th 899, 914 (2015).  And with respect to Plaintiff Del Rio, **the first page**

22    of the Rasier Agreement accepted by Plaintiff Del Rio includes a conspicuous notice in bold and in

23    capital letters stating that the agreement included an arbitration provision that would require

24    resolving disputes "**ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING**

25    **ARBITRATION**."  (Colman Decl., Ex. A at p. 1.)  Defendants also highlighted the arbitration

26    clause of the agreement, "in its own section, clearly labeled, in boldface."  *Kilgore v. KeyBank, Nat'l*

27    *Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013).  The multi-page Arbitration Provision contained in each

28    agreement includes, among other things, a boldfaced paragraph alerting Plaintiffs, "**This**

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

11.
MOTION TO COMPEL TO ARBITRATION

Case No. 3:15-cv-03667

**Arbitration Provision requires all such disputes to be resolved only by an arbitrator through**

**final and binding arbitration on an individual basis only and not by way of court or jury trial**

…" (Colman Decl., Ex. A at § 15.3i; *id.*, Ex. D at § 14.3i.)  Defendants also effectively ***encouraged***

Plaintiffs to download their agreements, as Plaintiffs could view their agreements at any time with a

click of a conspicuous download button through the Driver Portal.  (*Id.*, ¶ 14.)  Because Plaintiffs

had ample notice and time to review their agreements and the Arbitration Provision and decide for

themselves whether or not to agree to it, the contents of the agreement could hardly be a "surprise"

at all.  *See Dwyer v. Dynetech Corp.*, 2007 U.S. Dist. LEXIS 71647, at *11 (N.D. Cal. Sept. 17,

2007) (the fact that the plaintiff had four days to review arbitration agreement "weigh[ed] against a

finding of procedural unconscionability").

Plaintiffs' meaningful opportunity to opt-out further cements the conclusion that the

Arbitration Provision was not unconscionable.  It cannot be disputed that Plaintiffs were each

provided the opportunity to opt-out, ***even though there was no legal obligation to do so***.  *Sanchez*,

61 Cal. 4th at 914.  Plaintiffs' right to opt out of the Arbitration Provision is described in a

standalone section of the Arbitration Provision of each agreement with the underlined and bolded

title "**Your Right To Opt Out Of Arbitration**," and on the ***on the very first page of the Rasier***

***Agreement*** accepted by Plaintiff Del Rio.  (Colman Decl., Ex. A at p. 1, § 15.3.viii; *id.*, Ex. D at §

14.3viii.)   The Arbitration Provision also expressly explained that: (1) arbitration was "not a

mandatory condition of [Plaintiffs'] contractual relationship with [Defendants]"; (2) that Plaintiffs'

would "not be subject to retaliation if [they] … opt[ed]-out"; and (3) that Plaintiffs had the "right to

consult with counsel" concerning the Arbitration Provision.  (Colman Decl., Ex. A at § 15.3.viii; *id.*,

Ex. D at § 14.3viii.)[6]  Each Plaintiff had 30 days to inform Defendants of his desire to opt out, and

after accepting the terms of their agreement, each Plaintiff had the opportunity to opt out if he so

desired.  (*Id.*, ¶ 13.)  Although neither Plaintiff opted out of the agreement, ***hundreds*** of drivers who

---

[6] Indeed, there is no evidence that Plaintiffs, or any current or former transportation provider, suffered retaliation or potential retaliation as a result of filing a claim in court, with an administrative agency, in arbitration, or any other forum.  To the contrary, the fact that Plaintiffs are transportation providers who currently use the Uber App undermines such a contention.  *See* Colman Decl., ¶¶ 11-12 ; FAC, ¶ 7 ("Plaintiffs are current Uber employees …").

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

1    use or have used the Uber App have, in fact, exercised their rights to do so.  (*Id.*, ¶ 13.)  This

2    meaningful opportunity to opt out **precludes** any finding of procedural unconscionabilty and

3    therefore requires enforcement of the Arbitration Provision.  *See Kilgore*, 718 F.3d at 1059 (9th Cir.

4    2013) (holding that an arbitration provision is not procedurally unconscionably if it "allows

5    [signatories] to reject arbitration" through an opt-out procedure).[7]

6            Neither the Arbitration Provisions nor the section describing Plaintiffs' right to opt

7    out were ambiguous, confusing, or disguised.  In fact, this Court has previously found that the nearly

8    identical opt-out provision in an earlier version of the Rasier Agreement was "conspicuous" and

9    indeed, that "it would be hard to draft a more visually conspicuous opt-out clause."  *Mohamed*, 2015

10   U.S. Dist. LEXIS 75288, at *67.  Plaintiffs had a choice:  to opt out of the Arbitration Provision or

11   not, and regardless of what he chose, he could continue to have access to the Uber App to book

12   passengers.  Plaintiffs both declined to opt-out, and each Plaintiff having elected to arbitrate his

13   individual claims, must now be compelled to abide by that agreement.  *See Johnmohammadi v.*

14   *Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) (by not opting out within the 30-days,

15   plaintiff is bound by the terms of the arbitration agreement); *see also Circuit City Stores, Inc. v.*

16   *Ahmed*, 283 F.3d 1198, 1199-1200 (9th Cir. 2002) (same); *Rosas v. Macy's Inc.*, 2012 U.S. Dist.

17   LEXIS 121400, at *12 (C.D. Cal. Aug. 24, 2012) (same).

18   _____

19   [7] Defendants do not concede that *Gentry v. Superior Court*, 42 Cal. 4th 443 (2007) remains good law for any proposition.  The Ninth Circuit's ruling in *Kilgore* postdates *Gentry*, and numerous federal

20   courts have since followed *Kilgore.  See, e.g., Mill v. Kmart Corp.*, 2014 U.S. Dist. LEXIS 165666, at *14 (N.D. Cal. Nov. 26, 2014); *Mendoza v. Ad Astra Recovery Servs.*, 2014 U.S. Dist. LEXIS

21   1716, at *14 (C.D. Cal. Jan. 6, 2014); *Velazquez v. Sears, Roebuck & Co.*, 2013 U.S. Dist. LEXIS 121400, at *22-23 (S.D. Cal. Aug. 26, 2013).

22   However, it bears noting that even if *Gentry's* holding of procedural unconscionability remained intact, that holding was based on facts not present here.  In *Gentry*, the court noted that the

23   "explanation of the benefits of arbitration in the Associate Issue Resolution Handbook was markedly one-sided," and included statements professing that the arbitration process is cost effective and can

24   result in claim resolution "in a matter of weeks or a few months rather than years."  *Id.* at 470.  No such language espousing the alleged benefits of arbitration (let alone in a one-sided manner) exists in

25   Plaintiffs' Agreement.  To the contrary, Plaintiffs' agreements advised them that "[a]rbitration [was] not a mandatory condition of [their] contractual relationship with Uber" and "[i]f [they] [did] not

26   want to be subject to [the] Arbitration Provision, [they] may opt out …"  (Colman Decl., Ex. A at § 15.3viii; *id.* at Ex. D § 14.3viii.)  Indeed, the Rasier Agreement goes so far as to urge Plaintiff Del

27   Rio to "REVIEW THE ARBITRATION PROVISION SET FORTH BELOW CAREFULLY" AND TO "CONSIDER THE CONSEQUENCES OF THIS IMPORTANT BUSINESS DECISION,"

28   language which strongly differentiates the instant case from *Gentry*.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

13.

Case No. 3:15-cv-03667

MOTION TO COMPEL TO ARBITRATION

This Court previously indicated that it doubted the California Supreme Court would "vindicate an opt-out clause simply because a few signatories out of thousands were able to (and did) successfully opt out." *Mohamed*, 2015 U.S. Dist. LEXIS 75288, at \*51-52. However, applying a ***presumption*** that a certain percentage of opts-outs means that the opt-out right is not meaningful is ***itself*** a preempted state law presumption against arbitration that does not apply to other contracts. Courts generally do not presume that individuals who enter into ***other*** types of contracts that may contain an opt-out provision (*i.e.*, insurance or real estate contracts, or settlement agreements that contain an OWBPA age discrimination revocation period) and do not opt-out would have opted-out if the provision had only been more meaningful. Instead, the presumption is that the individuals entering into those sorts of contracts do not opt out because they ***actually want to enter into the commercial transactions***. *See Sanchez*, 61 Cal. 4th at 911 ("Commerce depends on the enforceability, in most instances, of a duly executed written contract."). Given the highly conspicuous nature of the opt-out right (it is addressed multiple times within the Arbitration Provisions of each agreement as well as on the very first page of the Rasier Agreement), it is at least equally plausible to infer that a low opt-out rate means the majority of drivers prefer the arbitral forum and its benefits. It is only through a *preempted* assumption that arbitration contracts are especially unpalatable as compared to other contracts that would lead to the contrary conclusion. *See Concepcion*, 131 S. Ct. at 1745 ("The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements.").

In sum, there is no procedural unconscionability where the agreement is not presented in a contract of adhesion and the contracting party is provided a meaningful opportunity to opt out.[8] *See Johnmohammadi*, 755 F.3d at 1077; *Ahmed*, 283 F.3d at 1199 (employee provided a meaningful opportunity to opt out by mailing form within 30 days); *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) (same). The Arbitration Provisions were not presented as a condition of

---

[8] Defendants note that even contracts of adhesion present only a minimal degree of procedural unconscionability. *See Sanchez*, 61 Cal. 4th at 915 (holding that contract of adhesion with no opt out clause established only "some degree of procedural unconscionability"); *Serpa*, 215 Cal. App. at 704 ("When, as here, there is no other indication of oppression or surprise, 'the degree of procedural unconsionability of an adhesion agreement is low…'") (citations omitted).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

14.

Case No. 3:15-cv-03667

MOTION TO COMPEL TO ARBITRATION

1  contracting or on a take-it-or-leave-it basis.  Rather, Plaintiffs were afforded a genuine opportunity

2  to opt out of the Arbitration Provision via an opt-out procedure approved by this Court.  *See*

3  *Mohamed*, 2015 U.S. Dist. LEXIS 75288, at *17 (noting that the Court had previously required Uber

4  to bold the opt-out provision subheading and insisted on Uber allowing drivers to opt out via email).

5  And Plaintiffs could each notify Defendants of his decision to opt out within 30 days.

6  The meaningfulness and effect of the opt-out provision is not somehow undone

7  because the provision did not include an additional proviso that only by opting out could Plaintiffs

8  avoid any prospect of paying any portion of the arbitrator's fees to decide arbitrability.  First, the

9  Arbitration Provisions here *repeatedly* notified each Plaintiff that he could be required to split the

10  cost of any arbitration with the Company, unless the law required otherwise.  (Colman Decl., Ex. A

11  at §§ 15.3, 15.3vi; *id.*, Ex. D at § 14.3vi.)

12  With respect to Plaintiff Del Rio, the introduction to the Arbitration Provision in the

13  Rasier Agreement *contains a bulleted notice* that: "Unless the law requires otherwise, as determined

14  by the Arbitrator based upon the circumstances presented, you will be required to split the cost of

15  any arbitration with the Company."  (*Id.*, Ex. A at § 15.3.)  There would be no reason to say it again

16  in the opt-out provision—presumably Plaintiffs either read the contract (in which they would know

17  this) or did not (in which case a hundred more warnings would have done no good).  Second,

18  potential payment of arbitration fees is not without corollaries in litigation: unsuccessful court

19  litigants may have to pay costs or fees in the thousands of dollars, including for unsuccessful

20  attempts to avoid agreements to arbitrate.  There would be no reason to call particular attention to a

21  potential "worst case scenario" for Plaintiffs in the opt-out clause that he might have to pay

22  arbitration fees should he not opt-out, because there are similar "worst case scenarios" in litigation

23  where he might have to pay similar costs.  Third, any rule to draw particular attention to the

24  "negatives" of an arbitration agreement is preempted.  The California Supreme Court recently

25  confirmed: "our unconscionability standard is, as it must be, *the same for arbitration and*

26  *nonarbitration agreements*."  *Sanchez*, 61 Cal. 4th at 937 (emphasis added).  Defendants were thus

27  not required to call out potentially unfavorable terms in order to avoid a finding of procedural

28  unconscionability given that no such notification rule exists *with respect to commercial transactions*

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

15.

MOTION TO COMPEL TO ARBITRATION

Case No. 3:15-cv-03667

*generally*.  Indeed, the Ninth Circuit recently enforced a delegation clause contained in the AAA rules that were *incorporated by reference* into the arbitration agreement and held that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitratibility." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see also Lane v. Francis Capital Mgmt. LLC*, 224 Cal. App. 4th 676, 686 (2014) ("There could be no surprise, as the arbitration rules referenced in the agreement were easily accessible to the parties – the AAA rules are available on the Internet.").  The court further noted that "the vast majority of the circuits that hold incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent to do so without explicitly limiting that holding to sophisticated parties or to commercial contracts." *Brennan*, 796 F.3d at 1130-31.  In *Brennan*, the arbitration agreement necessarily did not highlight the delegation clause given that it was contained *outside of the agreement itself*.  Here, Defendants likewise were not required to specifically highlight or notify drivers regarding the delegation clause in the opt-out provision or the potential to pay arbitration fees specifically in the opt-out clause.  There is no rule that a car sales contract must point out the buyer might have gotten a better deal on a car with a more powerful engine on another make of car, that the same car has sold to other buyers for $500 less, or that buyers will ultimately have to pay other costs such as insurance, car washes, and maintenance as a result of their purchase.  Any "disclosure of negatives" rule is a rule applicable only to arbitration agreements and inconsistent with the FAA.  *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 684, 687-88 (1996) (holding that state statute conditioning the enforceability of arbitration agreements on compliance with a special notice requirement not applicable to contracts generally was preempted by the FAA and reiterating that states are prohibited from singling out arbitration provisions for suspect status).  There is therefore no procedural unconscionability and the parties' agreement must be enforced.

### (2)    The Arbitration Provisions Are Not Substantively Unconscionable.

Even if there was some modicum of procedural unconscionability (and here Plaintiffs cannot even meet that threshold), Plaintiffs must also prove a high level of substantive

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

16.

Case No. 3:15-cv-03667

MOTION TO COMPEL TO ARBITRATION

1    unconscionability to avoid arbitration. *Pinnacle Museum*, 55 Cal. 4th at 247. They cannot do so

2    here.

3        This Court previously took issue with the fee provision, the mutual intellectual

4    property carve-out, and the confidentiality clause contained in a prior version of the Rasier

5    Agreement. *Mohamed*, 2015 U.S. Dist. LEXIS 75288, at *85-86. The foregoing provisions do not

6    render the Arbitration Provision unconscionable.

7        First, the fee provision unambiguously requires Defendants to pay all fees as required

8    by law and states that any fee disputes between the parties will be resolved by the arbitrator.

9    (Colman Decl., Ex. A at § 15.3.vi; *id.*, Ex. D at § 14.3vi.) It is the *nature of the claims* at issue that

10   determines which party will pay the arbitrator's fees and Plaintiffs have both asserted employment-

11   based claims. While independent contractor status is a defense, it does not alter the nature of the

12   claims asserted and accordingly, it does not obligate Plaintiffs to cover arbitrator fees. *Boghos v.*

13   *Certain Underwriters at Lloyd's of London*, 36 Cal. 4th 495, 507-08 (2005) (agreement to arbitrate a

14   statutory employment claim "is implicitly an agreement [by the Company] to abide by the

15   substantive remedial provision of the statute" and "to pay all types of cost that are unique to

16   arbitration"). Moreover, the Court cannot assume that the arbitrator will not follow the law (with

17   respect to fees or otherwise) or that arbitration is inferior. *See Mitsubishi Motors Corp.*, 437 U.S. at

18   633-634, 636-637 ("We decline to indulge the presumption that the parties and arbitral body

19   conducting a proceeding will be unable or unwilling to retain competent, conscientious, and

20   impartial arbitrators"); *PacifiCare Health Sys.*, 538 U.S. at 406-07 (2003) ("we should not, on the

21   basis of mere speculation that an arbitrator might interpret these ambiguous agreements in a manner

22   that casts their enforceability into doubt, take upon ourselves the authority to decide the antecedent

23   question of how the ambiguity is to be resolved"). Accordingly, no unconscionability exists as a

24   result of the fee provision.

25       Second, mutual intellectual property carve-outs are not substantively unconscionable

26   as a matter of law. *See Tompkins v. 23andMe, Inc.*, 2014 U.S. Dist. LEXIS 88068, at *59, 62-63

27   (N.D. Cal. June 25, 2014). Furthermore, the California Supreme Court recently affirmed that a

28   contract term is not substantively unconscionable simply because it gives one side a greater benefit.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

17.

Case No. 3:15-cv-03667

MOTION TO COMPEL TO ARBITRATION

1  *Sanchez*, 61 Cal. 4th at 911 ("A party cannot avoid a contractual obligation merely by complaining

2  that the deal, in retrospect, was unfair or a bad bargain.  Not all one-sided contract provisions are

3  unconscionable"); *id.* at 922 ("[A]lthough this remedy is favorable to the drafting party, the contract

4  provision that preserves the ability of the parties to go to small claims court likely favors the car

5  buyer.").  The California Supreme Court also reiterated that carve-outs must be viewed collectively,

6  rather than in isolation.  Here, there are several carve-outs that clearly favor Plaintiffs, including the

7  ability to pursue administrative claims.  *See id.* at 922.

8         Third, the Arbitration Provisions are not substantively unconscionably merely

9  because they contain a confidentiality provision, which states: "Except as may be permitted or

10  required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the

11  existence, content, or results of any arbitration hereunder without the prior written consent of all

12  Parties." (Colman Decl., Ex. A. § 15.3vii; *id.*, Ex. D at § 14.3vii.)  In fact, numerous courts have

13  upheld the validity of arbitration agreements with confidentiality provisions *identical* or *virtually*

14  *identical* to that present in Plaintiffs' agreements.  *See, e.g.*, *Velazquez*, 2013 U.S. Dist. LEXIS

15  121400, at *13-15 (word-for-word identical confidentiality clause did not render arbitration

16  agreement substantively unconscionable); *Andrade v. P.F. Chang's China Bistro, Inc.*, 2013 U.S.

17  Dist. LEXIS 112759, at *26-27 (S.D. Cal. Aug. 9, 2013) (no substantively unconscionability where

18  contract stated that, "[e]xcept as may be required by law, neither party nor an arbitrator may disclose

19  the existence, content, or results of any arbitration hereunder without the prior written consent of

20  both parties"); *Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F. Supp. 2d 831, 846 (N.D. Cal.

21  2012) (same); *Htay Htay Chin v. Advanced Fresh Concepts Franchise Corp.*, 194 Cal. App. 4th 704,

22  714 (2011) ("except as may be required by law, no party or arbitrator may disclose the existence,

23  content or results of the arbitration hereunder without the prior consent of both parties" not

24  unconscionable).

25         Other provisions of Plaintiffs' agreements do not alter this conclusion.  For example,

26  the Arbitration Provisions also are not substantively unconscionable merely because Plaintiffs'

27  agreements permit Defendants to modify the terms and conditions "effective upon publishing an

28  updated version of this Agreement…" on the driver portal (the Rasier Agreement) or on Uber's

website or on the App itself (the July 2013 Licensing Agreement).  (Colman Decl., Ex. A § 14.1; *id.*, Ex. D at § 12.1.)  The Ninth Circuit has expressly *rejected* the argument that a party's ability to unilaterally modify an agreement renders it unconscionable.  *Ashbey v. Archstone Prop. Mgmt., Inc.*, 612 Fed. App'x 430, at *4 (9th Cir. 2015) ("[U]nilateral modification provisions … are not substantively unconscionable because they are always subject to the limits 'imposed by the covenant of good faith and fair dealing implied in every contract.'") (citations omitted).  Even before *Ashbey*, courts in the Ninth Circuit and California have enforced contracts containing change-in-term provisions on the grounds that such modifications are already "limited by the duty to exercise the right of modification fairly and in good faith."  *Slaughter v. Stewart Enters.*, 2007 U.S. Dist. LEXIS 56732, at *30-31 (N.D. Cal. Aug. 3, 2007); *see also Serpa v. Cal. Sur. Invs., Inc.*, 215 Cal. App. 4th 695, 708 (2013); *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1474 (2013); *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 965-66 (2015).  An examination of the record here establishes even more compelling reasons why Defendants' ability to modify the Arbitration Provision is limited.  The Arbitration Provision contained in the Rasier Agreement was rolled out under the supervision of this Court, establishing that Defendants were bound to make modifications in good faith.  Even if Defendants had the power to unilaterally modify the Arbitration Provision, modifications cannot be effective until publication by email or through the Uber App, at which time each driver receives the right to opt out of the Arbitration Provision within 30 days.

The existence of a representative action waiver in Plaintiffs' agreements also does not make the agreements unenforceable.  Representative action waivers are not *per se* unenforceable. *See Fantastic Sams Franchise Corp. v. FSRO Ass'n*, 824 F. Supp. 2d 221, 225-226 (D. Mass. 2011) (individual arbitration of franchisees' claims brought by representative ordered); *AT&T Mobility LLC v. Smith*, 2011 U.S. Dist. LEXIS 125367, at *9, 19-20 (E.D. Pa. Oct. 6, 2011) (granting preliminary injunction to enforce representative action waiver).  Indeed, in *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348 (2014), the California Supreme Court expressly acknowledged that certain types of representative claims could likely be waived.  *Id.* at 387 ("Our opinion today would not permit a state to circumvent the FAA by, for example, deputizing employee A to bring a suit for the individual damages claims of employees B, C, and D.").  Accordingly, the mere

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

19.

Case No. 3:15-cv-03667

MOTION TO COMPEL TO ARBITRATION

existence of a representative waiver in Plaintiffs' agreements does not make the Arbitration Provision contained within unenforceable.

The representative action waivers are still enforceable notwithstanding *Iskanian*, at least in part, because a court has discretion to restrict enforcement of an unenforceable term while enforcing the remainder of the provision. *See* Civ. Code § 1670.5 ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court … ***may so limit the application of any unconscionable clause as to avoid any unconscionable result***.") (emphasis added); *see also Armendariz*, 24 Cal. 4th at 122 ("a trial court has discretion as to whether to sever ***or restrict*** the unconscionable provision or whether to refuse to enforce the entire agreement."); *Sanchez v. Western Pizza Enters., Inc.*, 172 Cal. App. 4th 154 (2009). Here, the Court should exercise its discretion, restrict application of the representative waiver, and enforce the remainder of Plaintiffs' agreements to arbitrate. *Pinnacle Museum*, 55 Cal. 4th at 245 ("the FAA precludes judicial invalidation of an arbitration clause based on state law requirements that are not generally applicable to other contractual clauses"). Doing so follows the FAA and federal and state public policy that strongly favor the enforcement of arbitration clauses and class action waivers. *Moses H. Cone*, 460 U.S. at 24 (1983) ("questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration"); *see also Pearson Dental Supplies, Inc. v. Superior Court*, 48 Cal. 4th 665, 682 (2010) (arbitration provision ***must*** be construed in a way to make it enforceable).[9]

Aside from all the reasons why the Arbitration Provisions are *not* substantively unconscionable, the Court can also consider why they are *substantively conscionable*, including, but not limited to:

---

[9] Defendants continue to assert that the FAA preempts the *Iskanian* rule, despite the Ninth Circuit's recent ruling in *Sakkab*, 2015 U.S. App. LEXIS 17071, at *3-4. Defendants preserve this argument here as to Plaintiffs but also understand that at this time the Court is bound to follow the operative Ninth Circuit precedent absent a reversal. Defendants further assert that the opt-out provision in the arbitration agreements means that any waiver of representative rights under PAGA was completely voluntary, not mandated, and therefore outside the ambit of *Iskanian*. The Ninth Circuit did not squarely address that issue in *Sakkab*.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

- They provide for a neutral arbitrator: "The Arbitrator shall be selected by mutual agreement of [Uber/the Company] and you.  Unless you and [Uber/the Company] mutually agree otherwise, the Arbitrator shall be an attorney licensed to practice in the location where the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the jurisdiction where the arbitration will be conducted." (Colman Decl., Ex. A at § 15.3.iii; *id.*, Ex. D at § 14.3iii.)

- They provide for adequate discovery: "In arbitration, the Parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses." (*Id.*, Ex. A at § 15.3.v; *id.*, Ex. D at § 14.3v.)

- They provide for a written decision: "The Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law." (*Id.*, Ex. A at § 15.3.vii; *id.*, Ex. D at § 14.3vii.)

- They do not limit statutorily available remedies: "The Arbitrator may award any party any remedy to which that party is entitled under applicable law, … and no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Arbitration Provision." (*Id.*, Ex. A at § 15.3.vii; *id.*, Ex. D at §14.3vii.)

- They require Uber to pay for arbitration: "[I]n all cases where required by law, [Uber/the Company] will pay the Arbitrator's and arbitration fees." (*Id.*, Ex. A at § 15.3.vi; *id.* at Ex. D at § 14.3vi.)

Under the circumstances, Plaintiffs cannot show the requisite substantive unconscionability needed to avoid their contractual obligation.

        **b.**        **Plaintiffs' Non-PAGA Claims Are Covered By The Arbitration Provision.**

       The second gateway issue is whether the Arbitration Provision covers the dispute between the parties. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 280 (2002) *Moses H. Cone*, 460 U.S. at 24-25 ("any doubts concerning the scope of arbitrable issues should be resolved in favor of

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA  94108.2693
415.433.1940

21.
Case No. 3:15-cv-03667
MOTION TO COMPEL TO ARBITRATION

arbitration").   Here, each Plaintiff unequivocally agreed to arbitrate each of his claims against Defendants.

In their FAC, Plaintiffs alleges that "Uber Drivers are employees, and like similar California employees, are entitled to basic wage protections such as overtime pay, the opportunity to take rest and meal breaks, expense reimbursement, minimum wage pay, and accurate and on-time payment of all wages due."  (FAC, ¶ 2.)  Plaintiffs agreed to arbitrate these claims because the Arbitration Provisions cover *any dispute* arising out of or related to their agreements and *any dispute* arising out of or related to Plaintiffs' relationship with Defendants, including, but not limited to, "disputes regarding any city, county, state or federal wage-hour law, … unfair competition, compensation, breaks and rest periods, expense reimbursement, … [and] the Fair Labor Standards Act, … and state statutes, if any, addressing the same or similar subject matters, and all other similar federal and state statutory and common law claims."  (Colman Decl., Ex. A at § 15.3i; *id.*, Ex. D at § 14.3i.)

Based on the foregoing language, there is no dispute that the Arbitration Provisions cover Plaintiffs' wage and hour, injunctive relief, and unlawful business practices claims.  Thus, a valid agreement to arbitrate exists between Plaintiffs and Defendants that covers every claim asserted by Plaintiffs in the FAC apart from the representative PAGA claim.  Where there is a valid agreement to arbitrate and the dispute falls within the scope of the agreement, the FAA requires that the Court order the parties to arbitrate in accordance with the terms of the agreement.  *See* 9 U.S.C. § 4; *Bencharsky v. Cottman Transmission Sys., LLC*, 625 F. Supp. 2d 872, 876 (N.D. Cal. 2008).  Here, the Arbitration Provision requires that Plaintiffs pursue their non-PAGA claims in individual arbitration only.

### C.    Plaintiffs' Class Claims Cannot Proceed And Plaintiffs' PAGA Claims Should Be Stayed.

The Court must dismiss Plaintiffs' class claims and order the parties to arbitrate each Plaintiff's non-PAGA claims solely on an individual basis.  It is now well settled in California that class action waivers are enforceable.  *Johnmohammadi*, 755 F.3d at 1074 ("Johnmohammadi can't argue that the class-action waiver is unenforceable under California law."); *accord Iskanian*, 59 Cal.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

22.

MOTION TO COMPEL TO ARBITRATION

Case No. 3:15-cv-03667

4th at 359-60 (enforcing class waiver and finding California law to the contrary is preempted by the FAA).

As the Supreme Court confirmed in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664 (2010), it is improper to force a party into a class proceeding to which it did not agree, because arbitration "is a matter of consent." Parties "may specify *with whom* they choose to arbitrate their disputes." *Id.* at 683 (emphasis in original). As such, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Id.* at 684. *See Murphy v. DirectTV, Inc.*, 724 F.3d 1218, 1226 (9th Cir. 2013) ("Section 2 of the FAA, which under *Concepcion* requires the enforcement of arbitration agreements that ban class procedures, is the law of California and of every other state."); *Kairy v. Supershuttle, Int'l*, 2012 U.S. Dist. LEXIS 134945, at *16-19 (N.D. Cal. Sept. 20, 2012) ("courts must compel arbitration even in the absence of the opportunity for plaintiffs to bring their claims as a class action"). *Cf. Morvant*, 870 F. Supp. 2d at 846 (finding *Concepcion* overruled *Gentry* and no longer precludes enforcement of class action waivers in arbitration agreements).

Here, the Arbitration Provisions contain a valid class action waiver: "You and [Uber/the Company] agree to resolve any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general representative action basis." (Colman Decl., Ex. A § 15.3v; *id.*, Ex. D at 14.3vi.) The Arbitration Provision in the Rasier Agreement further provides that "[t]his Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action." (*Id.*, Ex. A at § 15.3.i.) Accordingly, Plaintiffs cannot proceed with their class claims before this Court or in arbitration.

Should the Court agree with Defendants and order Plaintiffs' individual claims to arbitration, Defendants request that litigation of Plaintiffs' PAGA claim be stayed pending arbitration of each Plaintiff's individual claims. *See* 9 U.S.C. § 3 (when the court finds that any action "is referable to arbitration under [an arbitration agreement], [the court] shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement").

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

23.
MOTION TO COMPEL TO ARBITRATION

Case No. 3:15-cv-03667

**IV.     CONCLUSION**

Plaintiffs agreed to arbitration on an individual basis any and all claims arising from their contractual relationship with Defendants pursuant to the Arbitration Provisions contained in each of their agreements.   The Arbitration Provisions are valid and enforceable.   Accordingly, Defendants respectfully request that the Court compel Plaintiffs to arbitrate their claims on an individual basis and dismiss their class claims.

Dated: October 14, 2015                                        Respectfully submitted,


                                                               /s/ Andrew M. Spurchise
                                                               ROBERT G. HULTENG
                                                               JOHN C. FISH, Jr.
                                                               ANDREW M. SPURCHISE
                                                               ROXANNA IRAN
                                                               LITTLER MENDELSON, P.C.
                                                               Attorneys for Defendants
                                                               UBER TECHNOLOGIES, INC. AND
                                                               RASIER-CA, LLC

Firmwide:136247680.6 073208.1083

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

24.

Case No. 3:15-cv-03667

MOTION TO COMPEL TO ARBITRATION